## In re BARTHIER.

### (District Court, D. Massachusetts. December 31, 1910.)

### No. 15,970.

BANKRUPTCY (§ 409*)—DISCHARGE—OBJECTIONS—OMISSION TO KEEP BOOKS.

Where the bankrupt sold pianos, some for cash and others on lease or conditional sale, and his books showed all receipts from customers who had taken pianos under leases or conditional sales but not receipts from purchasers for cash, though from his stockbook and checkbook all money taken in or expended except $965 was fully accounted for, and he testified that he did not show receipts for pianos sold for cash because he did not want his salesmen to know that he was selling pianos at cost for cash, the facts did not show that he failed to keep proper books with intent to conceal his financial condition, under the rule that such concealment can exist only when it obtains with reference to persons entitled to know the facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

In the matter of bankruptcy proceedings against Louis N. Barthier. On objections to discharge. Overruled.

Knight & Brewster, for objecting creditor.
James G. Dunning, for bankrupt.

DODGE, District Judge. This bankrupt was a dealer in pianos in Springfield, adjudged bankrupt on his own petition, filed April 25, 1910. The creditor who opposes his discharge alleges omissions from his books of account intended to conceal his financial condition. The referee's report sustains this ground of objection. The referee's report of the facts is mainly taken from a statement of them agreed on before him by the parties. The bankrupt had done business on his own account since August, 1907. Some pianos he sold for cash, others he disposed of by leases or sales upon condition involving payments in installments. In a book called a cashbook he entered all receipts from customers who had taken pianos under leases or condi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tional sales, but not receipts from purchasers for cash. These he did not enter as such upon any book, and he kept no record of the prices received for pianos so sold. From his sales for cash between October 1, 1909, and the time of filing his petition, he received in all about $6,250. These sales were made for approximately what the pianos had cost. A stockbook was kept, showing all the pianos bought and sold, on whatever terms, by name and number. In the cases of the sales for cash the word "cash" in red ink appeared opposite the name and number. A checkbook was kept which showed amounts deposited in the bank, but not the sources from which the money came; also the amount of each check and the purpose for which it was drawn. Very nearly all the bankrupt's receipts were deposited in this bank account, whether from cash sales or other sources, and from the checkbook, therefore, could be ascertained what he had done with nearly all the money he had received; but a small proportion of his receipts from sales for cash was paid out by him in cash for salaries and living expenses. Of this part of his receipts and its disbursement by him no record was preserved. Other books were kept, which do not require special mention here. As to his intent in not recording these sales of pianos for cash there was no direct testimony but his own. He said it was done in order to prevent his salesmen from knowing that he was selling pianos at cost. He could not, according to his evidence, conveniently prevent them from having access to the books, and he feared that if they knew he was "pinched," so as to have to sell a piano at cost in order to meet an obligation, they might try to sell at cost, or might "tell it all over the city," customers to whom he had sold at higher prices might become dissatisfied in consequence, pianos sold on lease or installments might be returned, and his business might thus be injured.

The referee has found that there was apparently no intent on the bankrupt's part to work any fraud upon his creditors, and has reported that the refusal of discharge would be in his opinion harsh, and not within the general spirit of the bankruptcy act. He has, however, felt obliged to report in favor of refusal by the decision of the Court of Appeals for the Second Circuit in Re Hanna, 168 Fed. 238, 93 C. C. A. 452. In that case the bankrupt failed to enter on his books a loan considerable in proportion to the amount of his assets, and had done so in order to conceal his real financial condition from his confidential manager. In this case, while the bankrupt's exact financial condition was not ascertainable from his unexplained books, it is not clear that there was not enough on his books to show in substance how his assets and liabilities compared with each other. At any rate, the mere failure to make specific entries of receipts from cash sales and specific entries regarding the application of such receipts does not seem to have been enough to prevent them from doing so, and the creditor's specification of objections is expressly limited to these omissions. The stockbook showed which pianos had and which had not been sold, and the checkbook showed, out of $24,880 total receipts during the last six months, what he had done with all but $965, and the evidence is at most that what he wanted to conceal was a temporary lack of

ready money. There is nothing to show that he was insolvent before the filing of his petition. But supposing the case to have been that he was insolvent when he omitted the entries referred to, his salesmen had no such right to know that fact as a confidential manager would have. Concealment, it would seem, can only be from persons entitled to know.

The court said in Re Hanna, 168 Fed. 240, 93 C. C. A. 454, that "a provision intended to insure the keeping of correct and complete accounts should be rigidly enforced, especially one whose operation is made to depend upon intention, excluding mistake or neglect." With this I fully agree, and in view of the decision I reach a conclusion opposed to that of the referee with considerable hesitation. I think, however, that the facts in this case do not on the whole require, as the facts in Re Hanna did, the conclusion that there was an intent on the bankrupt's part to "conceal his financial condition," within the meaning of section 14b (2) of Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended in 1903 by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310).

I therefore grant the discharge applied for.